IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

**PLATEAU MEDICAL CENTER,**
**Employer Below, Petitioner**

**FILED**
**June 15, 2023**

EDYTHE NASH GAISER, CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

**vs.) No. 23-ICA-17**          (JCN: 2020009389)

**PEGGY GARRETT,**
**Claimant Below, Respondent**

## MEMORANDUM DECISION

Petitioner Plateau Medical Center ("PMC") appeals the December 16, 2022, order of the Workers' Compensation Board of Review ("Board"). Respondent Peggy Garrett filed a timely response.[1] PMC did not file a reply. The issue on appeal is whether the Board erred in affirming the Workers' Compensation Office of Judges' ("OOJ") order, which reversed the claim administrator's order granting Ms. Garrett a 6% permanent partial disability ("PPD") award and granted her an additional 7% PPD award for a total of a 13% PPD award.

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2022). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the Board's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

Ms. Garrett suffered a workplace injury on October 7, 2019, while employed by PMC, when she slipped off of a stoop and fell. That same day Ms. Garrett underwent an x-ray of her right wrist at PMC. The x-ray revealed a comminuted impacted distal radial fracture.

On October 15, 2019, Ms. Garrett underwent an open reduction with internal fixation of a right three-part intra-articular distal radius fracture, performed by John Tabit, D.O. On November 11, 2019, the claim administrator issued an order holding the claim compensable for a right-hand sprain. Ms. Garrett submitted a Diagnosis Update form dated January 21, 2020, requesting to include intra-articular fracture of the lower end of the right radius as a compensable component of the claim. On June 17, 2020, the claim administrator

---

[1] Ms. Garrett is represented by Reginald D. Henry, Esq., and Lori J. Withrow, Esq. PMC is represented by Mark J. Grigoraci, Esq.

1

issued an order adding intra-articular fracture of the lower end of the right radius as a compensable diagnosis. Ms. Garrett underwent an EMG on June 19, 2020, which revealed moderate right and severe left carpal tunnel syndrome ("CTS").

Ms. Garrett was seen by Paul Bachwitt, M.D., on September 28, 2020, for an independent medical examination ("IME"). Using the American Medical Association's *Guides to the Evaluation of Permanent Impairment*, (4th ed. 1993) ("*Guides*"), Dr. Bachwitt found 10% upper extremity impairment related to loss of range of motion in the right wrist. He found no impairment of the right elbow. Dr. Bachwitt converted 10% upper extremity impairment to 6% whole person impairment ("WPI"). Dr. Bachwitt noted that Ms. Garrett had preexisting CTS, but he found no reason to apportion for it.

On February 22, 2021, Ms. Garrett was seen by Bruce Guberman, M.D., for an IME. Dr. Guberman diagnosed Ms. Garrett with a comminuted, impacted distal radial fracture with intra-articular extension and a non-displaced ulnar styloid fracture. He found Ms. Garrett to be at maximum medical improvement ("MMI"). Using the *Guides*, Dr. Guberman found 22% upper extremity impairment for the right wrist, which he converted to 13% WPI. Dr. Guberman said that Ms. Garrett reported that her symptoms had worsened since her IME with Dr. Bachwitt, which accounted for the increased impairment rating.

Ms. Garrett was examined by Michael Kominsky, D.C., on May 3, 2021. Dr. Kominsky opined that Ms. Garrett was at MMI. Dr. Kominsky recommended that Ms. Garrett have future physical medicine treatments for her ongoing symptomatology. Using the *Guides*, Dr. Kominsky found a total of 19% upper extremity impairment in the right wrist, which he converted to 11% WPI.

On November 23, 2021, Ms. Garrett was seen by Syam Stoll, M.D., for an IME. Dr. Stoll opined that Ms. Garrett had reached MMI. Dr. Stoll found that any ongoing subjective complaints were due to the noncompensable medical diagnosis of bilateral CTS, rather than the compensable diagnoses in the claim. Using the *Guides*, Dr. Stoll found 12% upper extremity impairment for the right wrist which he converted to 7% WPI.

Ms. Garrett was examined by Marsha Bailey, M.D., on December 16, 2021. Dr. Bailey opined that Ms. Garrett had reached MMI. Using the *Guides*, Dr. Bailey found 6% upper extremity impairment for the right wrist, which she converted to 4% WPI. Dr. Bailey apportioned 2% of the WPI for Ms. Garrett's preexisting conditions and allocated the remaining 2% WPI to this claim.

On May 11, 2022, the OOJ issued an order reversing the claim administrator's order granting Ms. Garrett a 6% PPD award and granted her an additional 7% PPD, for a total of a 13% PPD award. The Board found that Dr. Guberman's report was the most persuasive and adopted his findings. PMC now appeals the Board's order.

Our standard of review is set forth in West Virginia Code § 23-5-12a(b) (2022), in part, as follows:

The Intermediate Court of Appeals may affirm the order or decision of the Workers' Compensation Board of Review or remand the case for further proceedings. It shall reverse, vacate, or modify the order or decision of the Workers' Compensation Board of Review, if the substantial rights of the petitioner or petitioners have been prejudiced because the Board of Review's findings are:
(1) In violation of statutory provisions;
(2) In excess of the statutory authority or jurisdiction of the Board of Review;
(3) Made upon unlawful procedures;
(4) Affected by other error of law;
(5) Clearly wrong in view of the reliable, probative, and substantial evidence on the whole record; or
(6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

*Duff v. Kanawha Cnty. Comm'n*, 247 W. Va. 550, __, 882 S.E.2d 916, 921 (Ct. App. 2022).

On appeal, PMC argues that the Board failed to properly consider medical evidence and ignored evidence establishing that Dr. Guberman's rating was inflated. PMC further argues that the evidence establishes that Ms. Garrett's remaining symptoms were caused by noncompensable CTS. We disagree.

The OOJ found that Dr. Bailey is the only physician that apportioned any of the impairment to preexisting CTS, thus, her report was found to be an outlier and unpersuasive. The OOJ found the reports of all other physicians to be of equal weight. The OOJ noted that Drs. Stoll, Guberman, and Bachwitt correctly used the *Guides* and performed their evaluations, and they simply had a difference of medical opinion regarding the level of Ms. Garrett's impairment. Therefore, the OOJ adopted the findings of Dr. Guberman as they were the most consistent with Ms. Garrett's position.

West Virginia Code § 23-4-1g(a) (2003) provides the following:

For all awards made on or after the effective date of the amendment and reenactment of this section during the year two thousand three, resolution of any issue raised in administering this chapter shall be based on a weighing of all evidence pertaining to the issue and a finding that a preponderance of the evidence supports the chosen manner of resolution. The process of weighing evidence shall include, but not be limited to, an assessment of the relevance, credibility, materiality and reliability that the evidence possesses in the context of the issue presented. Under no circumstances will an issue

3

be resolved by allowing certain evidence to be dispositive simply because it is reliable and is most favorable to a party's interests or position. If, after weighing all of the evidence regarding an issue in which a claimant has an interest, there is a finding that an equal amount of evidentiary weight exists favoring conflicting matters for resolution, the resolution that is most consistent with the claimant's position will be adopted.

After review, we conclude that the OOJ, as affirmed by the Board, was not clearly wrong in finding that Drs. Stoll, Guberman, and Bachwitt all correctly used the *Guides* to make determinations regarding Ms. Garrett's impairment. Further, the OOJ was not clearly wrong in adopting the findings of Dr. Guberman as they were the most consistent with Ms. Garrett's position.

Accordingly, we affirm the Board's December 16, 2022, order.

Affirmed.

**ISSUED:** June 15, 2023

**CONCURRED IN BY:**

Judge Thomas E. Scarr
Judge Charles O. Lorensen


**DISSENTING**:

Chief Judge Daniel W. Greear

Greear, C.J., dissenting:

The majority decision affirms the ruling of the West Virginia Workers' Compensation Board of Review ("Board"), that found the reports of Paul Bachwitt, M.D., Bruce Guberman, M.D., and Syam Stoll, M.D., are all of equal weight based off the reports appearing to be compliant with the AMA Guides to the Evaluation of Permanent Impairment ("AMA guides"). However, there is a clear deviation in Dr. Guberman's report when compared to Drs. Stoll and Bachwitt. Wherefore, I respectfully dissent.

West Virginia Code § 23-4-1(g) provides, in part, "[...] [t]he process of weighing evidence shall include, but not be limited to, an assessment of the relevance, credibility, materiality and reliability that the evidence possesses in the context of the issue presented." Further, "[i]f, after weighing all of the evidence regarding an issue, there is a finding that

an equal amount of evidentiary weight exists for each side, the resolution that is most consistent with the claimant's position will be adopted." W. Va. Code § 23-4-1(g).

The Board must base their decision upon the preponderance of the evidence. As the Board recognizes, the preponderance of the evidence means such evidence, when considered and compared with opposing evidence, is more persuasive or convincing.

In this matter, Ms. Garrett was evaluated by four doctors and a chiropractor. The report of Marsha Bailey, M.D., was not found persuasive for failing to mention radial or ulnar deviation, and for being the only evaluator to apply apportionment. Michael Kominsky, D.C., was not found persuasive due to recommending further physical medicine treatments, despite Ms. Garrett being at MMI. Drs. Bachwitt, Guberman, and Stoll's reports were all found reliable and of equal evidentiary value.

Dr. Bachwitt examined Ms. Garrett on September 28, 2020. Based on Dr. Bachwitt's examination, he found flexion of 35 degrees, extension of 30 degrees, radial deviation of 20 degrees, ulnar deviation of 20 degrees, and a whole person impairment ("WPI") of 6%. Dr. Guberman examined Ms. Garrett on February 22, 2021. Based on Dr. Guberman's examination, he found flexion of 15 degrees, extension of 15 degrees, radial deviation of 5 degrees, ulnar deviation of 5 degrees, and a WPI of 13%. The last examination was conducted by Dr. Stoll on November 23, 2021. Based on Dr. Stoll's examination, he found flexion of 40 degrees, extension of 25 degrees, radial deviation of 30 degrees, ulnar deviation of 15 degrees, and a WPI of 7%.

The Board found the opinions of Dr. Bailey and Chiropractor Kominsky to be not persuasive due to being outliers. However, the Board found Dr. Guberman's report to hold the same evidentiary weight as Drs. Bachwitt and Stoll's reports despite being a clear outlier based on the range of motion test and the WPI rating.

In this case and in others that have come before this court, the Board was too quick to throw up its hands and say that two differing medical opinions were reliable and therefore held equal evidentiary weight. The Board seems to believe that if two things are reliable then they must be equal. Here, Dr. Guberman's report may be reliable as he used the AMA guides to come to his decision. However, just because Dr. Guberman's report is reliable, does not mean that his report must hold the same evidentiary weight as the other medical reports that were also found reliable. Consistent with West Virginia Code § 23-4-1(g), reliability, along with relevance, credibility, and materiality, are simply factors used to assess what weight the evidence should be given.

I believe the record is clear that Dr. Guberman's report is an outlier based on the substantial difference in the range of motion tests and WPI rating when compared to the reports of Drs. Bachwitt and Stoll. Thus, Dr. Guberman's report cannot hold the same evidentiary weight as the reports of Drs. Bachwitt and Stoll. The Board should consider

factors such as these and not be too quick to jump to the determination that all reliable reports are of equal evidentiary weight.

Wherefore, for the foregoing reasons, I respectfully dissent.